VAUGHAN
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.

It is therefore ordered, that the judgment of the Commer-
cial Court be affirmed with costs.

## VAUGHAN vs. WESTERN MARINE AND FIRE INSU-
## RANCE COMPANY.

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

The master of a boat or vessel whose cargo is damaged by the perils insured
against, so as to render its re-shipment inexpedient and unprofitable, has au-
thority to sell it for the best price at the place, and for the benefit of all con-
cerned.

If a person acts merely as the agent of his son-in-law, at the sale of his own pro-
perty, and in superintending it afterwards, he will not be considered as inter-
ested, or his acts viewed as an interference with the property, or as an exercise
of ownership over it.

When an important fact, submitted to a jury, is not positively proved, but only
*inferred* from the evidence, their verdict is entitled to great weight; and will
not be set aside unless manifestly erroneous.

This is an action to recover of the insurers the value of sixty-three hogsheads of tobacco, estimated at $50 per hogshead, which is alleged to have been covered by an open policy of insurance taken out of the office of the defendants by Tiernan, Cuddy & Co., commission merchants, for the benefit of all whom it might concern. The tobacco was shipped on board a flat boat in Green river, Kentucky, and consigned to these commission merchants in New Orleans, but the boat struck a snag and sunk in said river. The tobacco was taken out in a damaged state, and sold on the bank by the master, for the benefit of the underwriters.

EASTERN DIS.
June, 1841.

VAUGHAN
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.

The plaintiff abandoned as for a total loss, and claims the sum of $3150, the value of the tobacco, and also the expenses of taking it out of the river and selling it, after deducting the amount of the sales.

The defendants pleaded the general issue and denied all liability. They aver that the sale of the damaged tobacco was illegal, pretended and fraudulent, and that the flat boat was unseaworthy, &c.

The case was submitted to a jury with a mass of testimony, upon which they returned a verdict in favor of the plaintiff for the sum of $2950, the value of fifty-nine hogsheads of tobacco. After an unsuccessful attempt to obtain a new trial, from judgment confirming said verdict, the defendants appealed.

*C. M. Jones,* for the plaintiff.

*Maybin,* for the appellants.

*Morphy, J.,* delivered the opinion of the court.

This action is brought on an open policy of insurance underwritten by defendants in favor of Tiernan, Cuddy & Co., for whom it may concern. The plaintiff claims, as for a total loss, the value of a certain number of hogsheads of tobacco, which he alleges were shipped by him to the address of the said Tiernan, Cuddy & Co., commission merchants in New Orleans, from Caldwell's point, on Green river, State of Kentucky. The

EASTERN DIS.
*June,* 1841.

VAUGHAN
*vs.*
WESTERN
MARINE & FIRE
INSURANCE CO.

petition sets forth that the flat boat No. 4, of which John Martin was master, started from the aforesaid place in June, 1837, having on board the said tobacco; that the said boat which was good and sound at the time of departure, proceeded down the river to a point called Roach's Landing, to take in the balance of her cargo; that while she was lying at this place, detained by low water, she sunk on account of having been injured either by striking on a log or in consequence of injury from the winds or both, by which accident a total loss of said tobacco occurred by one of the perils insured against, to wit: the dangers of the river. The defence is that the boat was not seaworthy at the commencement of and during the voyage insured; that the sale made of the damaged tobacco was illegal, pretended and fraudulent on the part of plaintiff, the same having been bought in by him or on his account and for his benefit, and that the plaintiff has no cause of action, whatever, against the underwriters.

This case presents the same questions of law as that of Page against the same defendants, decided this day. The facts of the two cases do not materially differ and the evidence in both is much the same in relation to the circumstances attending the loss, the seaworthiness of the boats and the necessity of the sale of the damaged cargo, made by the masters. It is therefore deemed unnecessary to go into a detail of all the testimony which is extremely voluminous; an attentive examination of it does not enable us to say that the jury erred in the view they took of it.

The point most insisted upon by defendants is the nullity of the sale and the effect of the interference of the insured with the property after the abandonment. The evidence shows that as soon as the tobacco was rescued from the river, a survey of it was called by the master and the damage assessed at seventy per cent. There being no newspaper published at Greensburg, written advertisements of the sale were posted up at different public places during four or five days. The tobacco was sold in lots of nine or ten hogsheads, about the middle

of the day, and a good many persons were present at the sale; the tobacco brought $557 50, which was considered as a fair and even a high price in its damaged condition. Several witnesses express the opinion that the best disposition which could possibly have been made with the cargo at that season of the year was to sell it on the bank where it was landed, and that had it been removed to Greensburg or re-shipped to New Orleans, it would not have brought the sum which it sold for, after deducting necessary expenses ; that this course is generally pursued on Green river and that it is the most beneficial to the interests of the underwriters. The plaintiff was present at the sale and the tobacco was purchased by J. G. White, his son-in-law. After the sale the damaged tobacco was opened, dried and re-packed under the superintendence of the plaintiff, and about three months after the sale, it was re-shipped for New Orleans. by the orders of the plaintiff, and placed in a warehouse. From these circumstances the defendants contend that plaintiff was himself the purchaser of the tobacco ; that he could not buy at a sale made by himself as agent of the underwriters, and can now claim only for a partial loss as if no sale had taken place.

The witnesses declare that they cannot say whether the plaintiff had an interest in the tobacco purchased by his son-in-law, or whether he attended to all this on behalf of the latter. This question of fact the jury decided in favor of the plaintiff. If he was acting only as the agent of the purchaser, his acts cannot be viewed as an interference or such an exercise of ownership over the property as can amount to a waiver of the abandonment. When an important fact in a case submitted to a jury is not positively proved by, but is only to be inferred from the evidence, their verdict is entitled to great weight. As we have often had occasion to say, we will interfere with a verdict on questions of fact only when it is manifestly contrary to the positive evidence of the case.

The judgment of the Commercial Court is therefore affirmed with costs.

The master of a boat or vessel, whose cargo is damaged by the perils insured against, so as to render its re-shipment inexpedient and unprofitable, has authority to sell it for the best price at the place, and for the benefit of all concerned.

If a person acts merely as the agent of his son-in-law, at the sale of his own property, and in superintending it afterwards, he will not be considered as interested, or his acts viewed as an interference with the property or as an exercise of ownership over it.

When an important fact, submitted to a jury, is not positively proved, but only inferred from the evidence, their verdict is entitled to great weight; and will not be set aside unless manifestly erroneous.